IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| GINGER BORDEN, | § | |
| :--- | :--- | :--- |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:15-cv-1170 |
| | § | JDL |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

On December 28, 2015, Plaintiff initiated this civil action pursuant to the Social Security Act, Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. For the reasons stated below, the Court **AFFIRMS** the ALJ's decision.

## BACKGROUND

On May 9, 2012, Plaintiff filed an application for supplemental security income, alleging impairments that became disabling on December 17, 2009[1]. (Transcript ("Tr.") at 95-96.) Plaintiff's claims were initially denied on August 10, 2012. (*Id.*) Thereafter, Plaintiff requested a hearing and the ALJ held a hearing on June 2, 2014. (*Id.* at 40.) The ALJ denied the claims on September 24, 2014. (*Id.* at 17–35.) On October 26, 2015, the Appeals Council denied a request for review. (*Id.* at 1.) Therefore, the ALJ's decision became the Commissioner's decision, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000), and Plaintiff initiated this civil action for judicial review.

## STANDARD

Title II of the Act provides for federal disability insurance benefits while Title XVI provides for supplemental security income for the disabled. Judicial review of the denial of

---

[1] The relevant period for Plaintiff's SSI claim begins May 9, 2012, as SSI benefits are not payable prior to the date of the application. (Tr. at 20); *see* 20 C.F.R § 416.335.

disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996).

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 F. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability;

and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.

At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 416.920(b)-(f) and 404.1520(b)(1)(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his September 24, 2014 decision:

1. The claimant has not engaged in substantial gainful activity since May 9, 2012, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: bipolar disorder and borderline personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all

exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out only simple and detailed tasks and instructions, and she cannot perform jobs that require high-stress activity.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 10, 1964 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 9, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 22–35.)

The ALJ determined that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id*. at 35.)

## ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) improperly analyzing Plaintiff's severe impairments and whether Plaintiff met a listed impairment at step 3; and (2) failing to properly weigh all of the medical opinions in the record. (Doc. No. 15, at 5, 9.)

### 1. Severe Impairment Determination

With respect to Plaintiff's first argument, Plaintiff contends that the ALJ committed error by finding that Plaintiff had only mild limitations with respect to two of the part B criteria of Listing 12.04. (Doc. No. 15, at 6.)

If an ALJ determines that a claimant has a severe impairment at step two, the ALJ must then determine at step 3 if the severe impairment meets or equals a listing in the appendix to the regulations, 20 C.F.R. Part 404, Subpt. P, App. 1. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Section 12.04 of the appendix sets forth specific criteria with respect to mental affective disorders. *See* 20 C.F.R. pt 404, subpt. P., app. 1. §12.04. A Plaintiff with a severe mental affective disorder must show that she meets either the requirements of parts A and B of section 12.04, or alternatively, the requirements of part A and C. *Id.* Turning specifically to the part B criteria, Plaintiff must prove her mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. pt 404, subpt. P., app. 1. §12.04(B). In order to do so, Plaintiff must set forth medical findings that support each of the criteria for the equivalent impairment determination. *Selders v. Sullivan*, 914 F. 2d 614, 619 (5th Cir. 1990). The ALJ is not required to make any particular finding if it is not supported by the evidence. 20 C.F.R. § 404.1545(a)(3).

Plaintiff specifically challenges the ALJ's finding that Plaintiff had only mild limitations in the first and second Part B criteria: 1) activities of daily living and 2) social functioning. (*See* Doc. No. 15, at 5.) Plaintiff contends that there were no medical opinions in the record to support the ALJ's findings of fact with regard to whether Plaintiff met or equaled a listed impairment because the ALJ assigned "little weight" to the opinions of Dr. Williams, the only doctor in the record who offered opinions specifically regarding the part B criteria. (*Id.*) Plaintiff further argues that the ALJ improperly relied on the testimony of Dr. Cole, an impartial medical expert who testified at the administrative hearing, to assess the four part B criteria. (*See*

Doc. No. 15, at 6–7.) Plaintiff states, "[b]ecause the only medical opinions within evidence indicated the Plaintiff was moderately limited in activities of daily living and social functioning (TR 104), the ALJ's holding the Plaintiff was mildly limited in those two domains constituted a medical conclusion or an interpretation of medical evidence." (*Id.* at 8.) As such, Plaintiff contends that the ALJ's findings of fact with respect to the first and second part B criteria constituted reversible error. (*See id.* at 9.)

The ALJ's determination is supported both legally and by substantial evidence. As an initial matter, Plaintiff's argument that the ALJ's holding constituted a medical conclusion or an interpretation of medical evidence fails. Plaintiff assumes that the ALJ is limited to assessing the medical opinion evidence of Dr. Williams in making a determination as to whether Plaintiff meets the Part B criteria. (*See* Doc. No. 15, at 8–9.) However, acceptable medical sources for providing evidence to establish an impairment include all of the various records of physicians or closely related medical professionals. 20 C.F.R. §§ 404.1513(a)(1)–(5) and 416.913(a)(1)–(5). Simply because none of the other medical sources in the record referred to the part B criteria by name does not mean they were not relevant to the ALJ's part B analysis. Further, although the ALJ considers the opinions from medical sources on the issue of whether a claimant meets or equals a listing, "the final responsibility for deciding" this issue belongs to the ALJ. 20 C.F.R. § 416.927(d)(2).

Indeed, the ALJ extensively discussed Plaintiff's treatment records and the medical opinion evidence. (*See* Tr. at 27–30.) For example, in finding Plaintiff had only mild restrictions in activities of daily living, the ALJ noted that Plaintiff's mental status exams showed Plaintiff was "cleanly groomed and dressed, which was representative of her appearance at the hearing." (Tr. at 28). Additionally the ALJ noted that during Dr. Jereb's psychological evaluation,

7

"[Plaintiff] told Dr. Jereb she could complete some practical tasks in a timely and appropriate manner; she bathed, groomed, and dressed herself; she states she could cook, had valid driver's license, read and wrote well; and could add and subtract using her fingers." (See *id.* At 28, 453.) Likewise, in determining that Plaintiff had only mild difficulties in social functioning, the ALJ noted, for example, that "[claimaint's] JSA Health mental status exams had the following findings: cooperative, candid, and polite attitude; normal speech with some hyperactivity and mildly dysarthric speech; normal affect; no suicidal/homicidal ideation; and intact impulse control." (Tr. at 29, 467.)

Additionally, the ALJ noted that Dr. Cole and Dr. Murphy both testified that Plaintiff does not have a medically determinable impairment that meets or equals a the requirements of a listing. (Tr. at 28, 63.) The ALJ assigned "significant weight" to Dr. Cole's opinion because he found "it to be largely consistent with the record and well supported by the objective findings." (Tr. at 32.) Plaintiff alleges that Dr. Cole's testimony was contradictory because Dr. Cole testified that Plaintiff's medical status exam "didn't show any indication of a severe level of impairment" (Tr. at 63), yet testified that Plaintiff had various functional limitations (Tr. at 64–66). (*See* Doc. No. 15 at 8.) The phrase "severe impairment" has a very particular meaning in the context of the Social Security Act that is unique from a layman's understanding of the term. Based on Dr. Cole's other testimony, it is clear that Dr. Cole was not disputing that in the social security sense, Plaintiff has the severe impairments of bipolar disorder and borderline personality disorder. (*See* Tr. at 61 ("Q. Then, give me your diagnosis of what impairments this Claimant has within your field of specialty and their severity. A. The basis one is the bipolar disorder that she referred to. It's also in the record. The severity is the issue, and I can go into that if you'd like.")). The ALJ thus did not commit error by disregarding Dr. Cole's statement that Plaintiff

8

lacked severe impairments, as Dr. Cole simply meant that Plaintiff's impairments that were not so "severe" as to cause Plaintiff to have marked functional limitations. Plaintiff's argument that the ALJ committed error by ascribing significant weight to a contradictory witness is thus meritless. *See Worsham v. Shalala*, 3 F.3d 440 (5th Cir. 1993) ("The ALJ is entitled to determine the credibility of medical experts and to weigh their opinions accordingly.")

Plaintiff also argues that the ALJ improperly relied on Dr. Cole's testimony in his analysis of the part B criteria because Dr. Cole did not explicitly testify regarding the part B criteria. (Doc. No. 15 at 8.) Plaintiff's contention that the ALJ must reject Dr. Cole's opinion because he did not specifically say he was addressing the Part B criteria is unpersuasive. Plaintiff cites no case law for the assertion that Dr. Cole was required to refer to the part B criteria by name for his testimony to be relevant to those criteria. While it is true that the ALJ did not explicitly ask Dr. Cole to discuss the part B criteria, the ALJ did ask Dr. Cole to give him a diagnosis of the Plaintiff's impairments and provide his assessment of the medical evidence, including Plaintiff's functional limitations. (*See* Tr. at 61; 64–5.) As with the ALJ's reliance on the other medical evidence of record, the ALJ did not commit error by relying on Dr. Cole's opinion in his part B analysis.

The ALJ was also entitled to assign "little weight" to the opinion of Dr. Williams because the ALJ found his assessment to be inconsistent with the overall record. (Tr. at 32.) As explained above, substantial evidence supports the ALJ's decision to rely on the other medical source opinions in the record in making his step 3 determination. It is not the Court's duty to "reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner]'s." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). Further, Dr. Williams found that Plaintiff had only moderate

impairments with respect to the first two Part B criteria. Such findings would still be insufficient to establish that Plaintiff had an impairment equal to an appendix listing. Any alleged error in the ALJ's failure to assign more weight to Dr. Williams' opinions was thus harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988) ("This court will not vacate a judgment unless the substantial rights of a party have been affected.").

Accordingly, Plaintiff's assertion that there was no medical opinion evidence in the record to support the ALJ's assessment of the 12.04(B) criteria is unpersuasive. The ALJ's decision that Plaintiff did not meet the criteria of 12.04(B) was supported by substantial evidence and was not in error of law.

### 2. Treating Physician's Opinion

Plaintiff argues that the ALJ failed to properly consider the opinions of Dr. Ronald J. Jereb and failed to give Dr. Jereb's opinion the proper weight of a treating physician. (Doc. No. 15, at 9.) Specifically, Plaintiff argues that the ALJ improperly weighed and rejected Dr. Jereb's opinions by failing to properly analyze the six factors in 20 C.F.R. § 416.927(c). (*Id.* at 14.) Additionally, Plaintiff contends that the ALJ erred by not providing substantive reasons as to why he rejected Dr. Jereb's opinions. (*Id.* at 16, 12.) Defendant contends that the ALJ properly considered Dr. Jereb's opinions, and made clear to subsequent reviewers the reasons for the weight he accorded to each of the medical opinions in the record. (*See* Doc. No. 16, at 9.)

Contrary to Plaintiff's argument, Dr. Jereb was not Plaintiff's treating physician. A treating physician is defined in the Federal Regulations as one "who has, or has had an ongoing treatment relationship with the patient." 20 C.F.R. § 416.902. Generally, a treating physician is someone that the patient can establish that he sees or has seen with a "frequency consistent with accepted medical practice for the type of treatment/evaluation required for the medical condition

10

at issue." *See Leggett v. Charter*, 67 F.3d 558, 566 (5th Cir. 1995). Dr. Jereb was hired by Plaintiff's counsel to conduct a one-time consultative examination. (*See* Tr. at 452.) Dr. Jereb is not due special deference as a treating physician based on this single examination of Plaintiff. *See Robinson v. Astrue*, 271 F. App'x 394, 396 (5th Cir. 2008); *see also Christman v. Comm'r of Soc. Sec. Admin.*, 2014 WL 10181063, at *3 (E.D. Tex. 2014) ("Examining doctors are not entitled to the weight of treating doctors.") (*citing Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008)).

Plaintiff effectively asks this Court to extend the holding in *Newton v. Apfel* to cover the facts of this case. (Doc. No. 15, at 11.) In *Newton*, the Fifth Circuit held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating specialist only if the ALJ performs a detailed analysis of the treating physicians views under the criteria set forth in 20 C.F.R. 404.1527(d)(2)." *Newton*, 209 F.3d at 453 (5th Cir. 2000). Specifically, Plaintiff contends that because Dr. Jereb provided the only medical opinions within the administrative record based upon a personal examination of the Plaintiff, that this Court should require the ALJ to conduct a detailed analysis of Dr. Jereb's views. (*See id.* at 11–12.) However, Plaintiff points to no case law to support its contention that the holding in *Newton* should extend to a one-time consultative examiner such as Dr. Jereb. *See Gonzales-Sargent v. Barnhart*, 2007 WL 175207, at *8 (W.D. Tex. 2007) (rejecting plaintiff's claim that a prior Fifth Circuit case required the six-part analysis for a treating doctor to also apply to a non-treating doctor).

With respect to the general criteria to evaluate medical evidence under 20 C.F.R. § 416.927(c), the ALJ provided a sufficient explanation to support his determination that Dr. Jereb was not credible with respect to his finding that Plaintiff had "marked and extreme limitations in

nearly every area of work functioning." The ALJ extensively discussed and considered the opinions of Dr. Jereb. (Tr. at 32.) Indeed, the ALJ did not wholesale reject Dr. Jereb's opinions. As noted previously, the ALJ factored in portions of Dr. Jereb's assessment of Plaintiff in his Part B determination. With respect to Dr. Jereb's opinions that Plaintiff has "marked and extreme limitations in nearly every area of work functioning", the ALJ specifically explained that Dr. Jereb's opinions were unsupported by Plaintiff's treatment records, unsupported by Dr. Jereb's own mental examination, and unsupported by specific objective medical findings. (Tr. at 26, 33.) For example, the ALJ explained that Plaintiff's treatment records showed that Plaintiff's symptoms were manageable with medication and allowed Plaintiff to perform low-stress work requiring only simple and detailed tasks. (Tr. at 30–32.) While Plaintiff argues that Dr. Jereb's mental examination included other findings that did indicate functional limitations consistent with Dr. Jereb's limitation determinations, Plaintiff does not address the other medical source evidence in the record supporting the ALJ's decision, and which the ALJ specifically discussed. Indeed, the ALJ observed that "[t]he majority of [Plaintiff's] mental status examinations have been essentially normal, including normal social functioning, intact concentration, intact memory, and full orientation" (Tr. 32). "Where the record contains conflicting evidence, the Secretary, not the courts, must make credibility determinations and resolve the conflicts in the evidence." *Worsham v. Shalala*, 3 F.3d 440 (5th Cir. 1993). Additionally, Dr. Cole testified that Dr. Jereb's opinion that Plaintiff had marked and extreme limitations was unsupported by the record. (*See* Tr. at 64.) Although Plaintiff again challenges the ALJ's reliance on Dr. Cole's testimony, as discussed previously, the ALJ was entitled to rely on Dr. Cole in his analysis. As such, Plaintiff's claim that the ALJ erred by not providing substantive reasons as to why he rejected Dr. Jereb's opinions is without merit.

**CONCLUSION**

In light of the foregoing, the final decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g), and Plaintiff's complaint is **DISMISSED** with prejudice.

**So ORDERED and SIGNED this 10th day of July, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE